FILED
November 18, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: CR
Deputy

**SEALED** UNITED STATES DISTRICT COURT **SEALED**
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**JOHNNY HURTADO OLASCOAGA, (1)**<br>A/K/A "PEZ,"<br>A/K/A "DON GABINO,"<br>**JOSE ALFREDO HURTADO OLASCOAGA, (2)**<br>A/K/A "FRESA,"<br>A/K/A "CHINO,"<br>**JOSUE LOPEZ HERNANDEZ, (3)**<br>A/K/A "COLIMA,"<br>**JOHNNY HURTADO HERNANDEZ, (4)**<br>A/K/A "TARZAN,"<br>**EDGAR AGUILAR CRUZ, (5)**<br>A/K/A "ALEX,"<br>A/K/A "ALEX AGUILAR,"<br>A/K/A "EDWIN CRUZ AGUILAR,"<br>A/K/A "GALLITO,"<br>A/K/A "GALLO,"<br>A/K/A "GALLITO DE JUGETES,"<br>A/K/A "GALLO DE ORO,"<br>A/K/A "MI AMIGO EL VIEJON,"<br>A/K/A "GALLITO EL VIEJON,"<br>**ROGELIO ESTRADA JARAMILLO, (6)**<br>A/K/A "ROYER JARAMILLO,"<br>A/K/A "ROYER JARA,"<br>A/K/A "CHINO,"<br>**FLORENCIO AGUILAR LORENZO, (7)**<br>A/K/A "LENCHO,"<br>**LAURENCIO REYES AMBRIZ, (8)**<br>A/K/A "WENCHO,"<br>**ANASTACIO REYES FLORES, (9)**<br>A/K/A "TACHO," | § | CRIMINAL NO. **DR:26-CR-03395-AM**<br><br>**<u>INDICTMENT</u>**<br><br>**COUNT 1:** 18 U.S.C. § 1962(d), RICO Conspiracy<br><br>**COUNT 2:** 21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846, Conspiracy to Possess With Intent to Distribute Cocaine<br><br>**COUNT 3:** 21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963, Conspiracy to Import Cocaine<br><br>**COUNT 4:** 21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846, Conspiracy to Possess With Intent to Distribute Heroin<br><br>**COUNT 5:** 21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963, Conspiracy to Import Heroin<br><br>**COUNT 6:** 21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846, Conspiracy to Possess With Intent to Distribute Methamphetamine<br><br>**COUNT 7:** 21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963, Conspiracy to Import Methamphetamine<br><br>**COUNT 8:** 8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(iv), Conspiracy to Transport Illegal Aliens Resulting in Death |

**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

Defendants.

**COUNT 9**: 8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(iv), Illegal Alien Transportation Resulting in Death

**COUNT 10:** 18 U.S.C. §§ 554 & 371, Conspiracy to Smuggle Goods from the United States

**COUNT 11:** 18 U.S.C. § 554, Smuggling Goods from the United States

**COUNT 12:** 18 U.S.C. § 933(a)(1), (a)(3) and (b), Conspiracy to Traffic Firearms

**COUNT 13:** 18 U.S.C. § 1956(h), Conspiracy to Launder Money Internationally

**COUNT 14:** 18 U.S.C. § 2339B, Conspiracy to Provide and Attempt to Provide Material Support to Designated Foreign Terrorist Organization

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

1. At times material to this Indictment, on or about the dates stated and approximate times stated below.

2. The La Nueva Familia Michoacana (hereinafter "LNFM") Cartel is a formidable and ascendant cartel in Mexico involved in drug trafficking, firearms trafficking, alien smuggling,

domestic mineral mining, money laundering, and extortion. The LNFM Cartel often uses fish and strawberry decals stemming from the nicknames of its leaders, **JOHNNY HURTADO OLASCOAGA** aka "**PEZ**" (hereinafter "**PEZ**") and **JOSE ALFREDO HURTADO OLASCOAGA** aka "**FRESA**" (hereinafter "**FRESA**").

3. The LNFM Cartel is based in the Mexican states of Guerrero, Michoacán, and Edomex (officially known as the State of Mexico). Although the LNFM Cartel is active across three Mexican states, its core operations are in Michoacán. Because the LNFM Cartel's operations are not confined to a single state or sizeable municipality, it has frequently encroached on rival cartel territory and corresponding cartel operations in Mexico and the United States.

4. The LNFM Cartel has had ongoing conflicts with the Jalisco New Generation Cartel (hereinafter "CJNG"), smaller cartels such as Carteles Unidos, Los Tlacos, and splinter factions from cartels including New Empire Cartel, and Los Rojos, among others. The hilly and dense terrain in large parts of Guerrero and Michoacán enable the LNFM Cartel to deploy expansive surveillance operations and prevent unexpected direct/conventional clashes with rival cartels and Mexican security personnel. Additionally, the LNFM Cartel pioneered regional drone warfare by outfitting drones with improvised explosive devices.

5. The LNFM Cartel has an expansive drug trafficking operation under its umbrella, distributing narcotics, namely methamphetamine, cocaine, and heroin, to the United States. The LNFM Cartel also has alien smuggling and firearms trafficking operations that oftentimes use its drug trafficking routes. The proceeds from these illegal operations flow directly to the LNFM Cartel's leadership. The members and associates of the LNFM Cartel commit acts of extortion, bribery, and violence to maintain the organization's multifaceted criminal operations.

6. The LNFM Cartel is headed by brothers **PEZ** and **FRESA**.



**Johnny Hurtado Olascoaga "Pez"**



**Jose Alfredo Hurtado Olascoaga "Fresa"**

7. The LNFM Cartel has a rigid hierarchical structure: **PEZ** is the head of the LNFM Cartel and **FRESA** is the number two in command. More recently, **FRESA** has played a larger role in the LNFM Cartel's day-to-day operations but has not supplanted his brother as its leader. Other high-ranking LNFM Cartel members manage drug trafficking, firearms trafficking, alien smuggling, and security operations. The LNFM Cartel has numerous plaza bosses who manage municipalities in Mexico under its control. Plaza bosses and their respective cell members oversee drug trafficking, firearms trafficking, alien smuggling, and money laundering activities. Facilitators in Mexico and the United States coordinate drug couriers, firearms traffickers, and alien smugglers. The enforcement operations for the LNFM Cartel are carried out by teams of assassins, known in Spanish as sicarios, who commit acts of violence against competitors and errant LNFM Cartel members through kidnapping, torture, and murder of the responsible person or his/her family members. Murders oftentimes involve extreme violence and public display of the victim, including mutilation and dismemberment of body parts in a ritualistic or symbolic fashion.

**<u>History and Formation of the LNFM Cartel</u>**

8. The framework for the LNFM Cartel's development began in Michoacán in the early 2000s. After the fall of La Empresa, a cartel previously based in Michoacán, top lieutenants in La Empresa formed the La Familia Michoacana (hereinafter "LFM") Cartel. The LFM Cartel was one of the chief predecessors of the LNFM Cartel.

9. The LFM Cartel publicly declared itself as a cartel when twenty or so LFM Cartel sicarios stormed a nightclub in Uruapan, Michoacán in 2006. The sicarios unzipped garbage bags and rolled out five severed heads of Los Zetas Cartel members. Before departing the nightclub, the sicarios left behind a note that read, "The Family does not kill for money. It does not kill women. It does not kill innocent people. Only those who deserve to die, die. Let everyone know this is: divine justice." The LFM Cartel also published its mission statement in various newspapers in Michoacán. The LFM Cartel asserted: "Our sole motive is that we love our state and are no longer willing to see our people's dignity trampled on."




Nightclub note left behind by LFM sicarios in 2006

10. The LFM Cartel's push for regional solidarity in Michoacán coincided with

blending religious and cult of personality elements as evident from its nightclub note manifesto. The LFM Cartel had a strict honor code for its members. Members of the LFM Cartel who used methamphetamine, sold methamphetamine to local people, or committed acts of domestic violence suffered harsh penalties. The leadership of the LFM Cartel did not construe the exportation of methamphetamine as evil or a violation of its honor code. Rather, it was a means to amass wealth for the people of Michoacán. Indeed, thousands of Michoacanos were employed in the LFM Cartel's methamphetamine operation and averaged making 1,500 USD to 2,000 USD per month in the mid-2000s. Through social assistance and economic redistribution, the LFM Cartel won over large segments of the regional populace in Michoacán and the surrounding areas. Moreover, its extortion of large-scale businesses and regional leaders sustained its egalitarian and communitarian efforts. The LFM Cartel's growing power and regional populism allowed it to dictate the actions of local law enforcement: Leadership of the LFM Cartel would order corrupt or incompetent police officers to resign and police officers were even executed for disobedience. LFM members used local law enforcement uniforms and radio frequencies at will.

11. As the LFM Cartel amassed more power and control, it took over Lázaro Cárdenas, a bustling port city in Michoacán. As a result, the LFM Cartel was able to obtain cocaine from South America and precursor chemicals for synthesizing other drugs, such as methamphetamine, through Lázaro Cárdenas.

12. Nazario Moreno Gonzalez, aka Chayo (hereinafter "Chayo"), the leader of the LFM Cartel, published a book entitled *Pensamientos* (Thoughts) that was mandatory reading for the members of the LFM Cartel. The LFM Cartel also distributed Chayo's book to rural schools throughout Michoacán. Chayo reportedly died in a shoot-out in 2010 and subsequently garnered saint-like reputation because people claimed they saw him alive. After Chayo's supposed death,

successors continued to lead the LFM Cartel, but organizational schisms began to form.

13. Approximately a year after Chayo's reported death, LFM Cartel members formed the Knights Templar as a splinter faction. The Knights Templar amplified Chayo's religious and altruistic activities. Members of the Knights Templar wore medieval-styled tunics during rituals, erected statues of Chayo, and implemented an honor code modeled after medieval crusaders that was even more strict than the LFM Cartel's. The Knights Templar faction ended after all its leaders were arrested by Mexican security personnel in 2015-2017.

14. Factional divides between the LFM Cartel and the Knights Templar enabled CJNG and other cartels (including the remnants of cartels and cartel splinter factions) to gain a foothold in Michoacán and Guerrero, weakening LFM Cartel's push for regional control of Michoacán. Subsequently, remnants of the LFM Cartel, the Knights Templar, and other regional cartels formed the LNFM Cartel. As a result, the LNFM Cartel's origins were heavily influenced by the history and traditions of the LFM Cartel and the Knights Templar.

15. The LNFM Cartel's current organizational structure had its beginnings in 2011 when **Pez** headed the remnants of the LFM Cartel. In the early 2020s, Medardo Hernandez Vera, aka Cien (hereinafter "Cien"), became a ranking member of the LNFM Cartel. **PEZ** and **FRESA** ordered his murder in June 2022. Until then, Cien had controlled the LNFM Cartel's territory in Edomex through extortion and kidnapping and was the chief enforcer for the area. Cien also handled drug operations in lucrative plazas controlled by the LNFM Cartel.

16. After taking over as heads of the LNFM Cartel, **PEZ** and **FRESA** eliminated the code-of-honor/quasi-religious framework that underpinned the LFM Cartel and the Knights Templar. However, **PEZ** and **FRESA** have sustained earlier efforts designed to redistribute wealth in Michoacán and generate regional support for the LNFM Cartel. For example, at the height of

the COVID-19 pandemic, the LNFM Cartel handed out bags of chlorine, canned goods, cereal, and toilet paper to the poor. The bags were labeled with stickers which stated, "Support from La Familia Michoacana."

17. The LNFM Cartel is more virulent compared to the LFM Cartel and the Knights Templar. The LNFM Cartel can mobilize sicarios far quicker than the LFM Cartel and the Knights Templar could. Through expanded operations, the LNFM Cartel is now in firm control of a tri-state area that encompasses Michoacán, Edomex, and Guerrero. Since July 2026, the LNFM Cartel has gained a foothold in Puebla and Morelos, Mexican states bordering Guerrero.

18. **PEZ** and **FRESA** have also rapidly developed the LNFM Cartel's mining operations. Instead of systematically extorting independent miners, the LNFM Cartel now controls *entire* mines, such as the Campo Morado mine in Guerrero. The control of highly-sought-after minerals in the global supply chain has been a boon for the LNFM Cartel, which now has a sophisticated and broad-based bartering system with Chinese companies. The LNFM Cartel trades Mexican minerals for shipments of Chinese precursor chemicals used in drug distribution.

19. **PEZ** and **FRESA's** meritocratic and corporate-like approach to the LNFM Cartel have benefited its members. For example, **EDGAR AGUILAR CRUZ** rose from a mere courier in the LNFM Cartel to a ranking member in only a few years. Yet, unlike legitimate businesses, the LNFM Cartel advances its narcotics distribution, illegal alien smuggling, and firearms trafficking operations through acts of violence and extortion.

**Drug Trafficking**

20. Foremost among the LNFM Cartel's illegal acts is the importation of cocaine, heroin, and methamphetamine into the United States. From 2006 until the present, **PEZ, FRESA,** and others have conspired to import and distribute thousands of kilograms of cocaine, heroin, and

methamphetamine.

21. Couriers, acting on behalf of the LNFM Cartel, use concealed compartments to traffic large quantities of cocaine, heroin, and methamphetamine into the United States. Notwithstanding, law enforcement has discovered the hidden narcotics on several occasions and tied the drug trafficking attempts to the LNFM Cartel. For example, in September 2024, United States Customs and Border Protection officers seized approximately 2.06 kilograms of cocaine concealed inside a vehicle traveling through the Eagle Pass Port of Entry. The cocaine had been placed in a foil-like package and then hidden in the engine's manifold.



2.06 kilograms of cocaine seized in September 2024 at the Eagle Pass Port of Entry

22. If successful, couriers transport the imported narcotics to stash houses operated by the LNFM Cartel throughout the United States. From there, the LNFM Cartel further distributes narcotics to street dealers in smaller quantities, who eventually sell cocaine, methamphetamine, and heroin to their ultimate user.



Heroin recovered from stash houses operated by the LNFM Cartel

**Alien Smuggling**

23. In addition to narcotics trafficking, the LNFM Cartel smuggles illegal aliens into the United States in exchange for significant profits. Alien smugglers often use the same corridors as narcotics and firearms traffickers.

24. Operating under the supervision of **PEZ** and **FRESA**, **EDGAR AGUILAR CRUZ** oversees the LNFM Cartel's alien smuggling operations. On at least one occasion, those alien smuggling operations have turned deadly.

25. On or about March 15, 2021, a Dodge Ram carrying several illegal aliens fled from law enforcement. The Dodge Ram was traveling in excess of 100 miles per hour near Del Rio,

Texas. The Dodge Ram subsequently veered into the opposing lane and struck a Ford F-150 head-on. Eight illegal aliens, including a minor child, traveling in the Dodge Ram died as a result of the crash.

**Firearms Trafficking**

26. To support its criminal objectives, the LNFM Cartel needs weapons. Firearms are used to protect drug trafficking routes, illicit proceeds from drug distribution, and drug processing locations. Yet, Mexico has strict gun laws that make it difficult for criminals to obtain firearms legally sourced in the country. Due to the strong domestic regulations of weapons in Mexico, the LNFM Cartel has smuggled firearms from the United States, bypassing Mexico's firearms regulations.

27. Acting under **JOSUE LOPEZ HERNANDEZ**'s supervision, **EDGAR AGUILAR CRUZ** orchestrated the purchase of firearms by numerous straw purchasers throughout Texas and the Southeastern United States. In turn, those firearms were transported to Texas and stored in stash houses along with the LNFM Cartel's drug supply.

28. From there, the LNFM Cartel used couriers to illegally export the firearms to Mexico.

29. On May 18, 2024, Customs and Border Protection officers at the Eagle Pass Port of Entry intercepted one such shipment. On that date, Customs and Border Protection officers discovered approximately 33 semi-automatic rifles, handguns, ammunition, and firearm accessories outbound for Mexico. The serial numbers on many of those firearms had been obliterated in order to prevent the tracing of specific firearms back to straw purchasers and LNFM Cartel members in the United States.




33 semi-automatic rifles, handguns, ammunition, and firearm accessories recovered on May 18, 2024

30. Yet, while taking steps to conceal the origins of the firearms, the LNFM Cartel has also altered firearms in ways designed to draw attention to them. For example, leaders of the LNFM Cartel ornately customized their firearms with cartoon and religious figures as well as gold plating.




Gold plated handguns designed and owned by LNFM members



Gold plated firearm recovered during the May 18, 2024, 33-firearm seizure

31. Members and associates of the LNFM Cartel have also discussed acquiring military grade weapons, ammunition, and accessories, including rocket-propelled grenades and pintle mounts used to equip M249 type rifles to vehicles.




Military grade weapon which the LNFM Cartel sought to acquire



Pintle mount added to LNFM vehicle

## Money Laundering

32. As firearms flow back to members and associates of the LNFM Cartel in Mexico, so do the profits earned from drug trafficking and illegal alien smuggling. On many occasions, weapons and currency traveled together. Other times, the LNFM Cartel used wire transfers to send profits back to the LNFM Cartel's leaders.

33. Over the last several years, the LNFM Cartel has smuggled thousands of illegal aliens and trafficked firearms in exchange for millions of United States dollars. The vast majority of those illegal profits flow back to the LNFM Cartel's leaders in Mexico. Seized ledgers outline the direct participation of several Defendants, including **EDGAR CRUZ AGUILAR**.

## Material Support of Terrorism

34. Based, in part, on the foregoing, the LNFM Cartel was designated as a Foreign Terrorist Organization (hereinafter "FTO") by the United States on February 20, 2025.

35. After the Secretary of State's designation of the LNFM Cartel as an FTO was published in the Federal Register, **PEZ**, **FRESA**, and others have conspired to provide material support and resources to the LNFM Cartel, including but not limited to, the aforementioned military grade weapons, ammunition, accessories, and money.

## COUNT ONE
RICO CONSPIRACY
[18 U.S.C. § 1962(d)]

36. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

37. At all times relevant to this Indictment, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"

**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"

**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ-ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

and others known and unknown, were members and associates of the LNFM Cartel, a criminal organization whose members and associates engaged in: (a) the smuggling of illegal aliens, (b) the trafficking of narcotics, including methamphetamine, cocaine, and heroin; (c) firearms trafficking; (d) the laundering of proceeds earned from illegal acts; and (e) acts of violence, including the kidnapping, torturing and murdering of those who lose or steal assets from, are disloyal to, or are perceived as enemies of the LNFM Cartel, and which operates principally in the Western District of Texas, the United Mexican States, and elsewhere in the United States.

38. The LNFM Cartel, including its leadership, membership, and associates, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is to say, a group of individuals associated-in-fact. The LNFM Cartel constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the LNFM Cartel. The LNFM Cartel is engaged in and its activities affect interstate and foreign commerce.

**<u>Purposes of the LNFM Cartel</u>**

39. The purposes of the LNFM Cartel included the following:

a. enriching members and associates of the LNFM Cartel through, among other things, smuggling illegal aliens into the United States, trafficking firearms, importing and distributing illegal controlled substances into and throughout the United States, and money laundering;

b. promoting and enhancing the LNFM Cartel and the activities of its members and associates;

c. preserving and protecting the power, territory, and profits of the LNFM Cartel through the use of intimidation, violence, threats of violence, kidnapping, torture, and murder to maintain control over its criminal operations in Mexico and the United States;

d. keeping rival cartels, persons perceived as potential informants or witnesses against the LNFM Cartel and its criminal activities, law enforcement officers and authorities, the media, and the public-at-large in fear of the LNFM Cartel, and in fear of its members and associates through threats and acts of violence;

e. preserving the ongoing viability of the LNFM Cartel by eliminating its competition in Mexico and the United States and maintaining the order necessary to conduct its criminal activities through the kidnapping, torture, and murder of LNFM Cartel's perceived enemies, those determined to be disloyal to the LNFM Cartel, and those who lose or steal the LNFM Cartel's assets.

**Means and Methods of the LNFM Cartel**

40. The means and methods which members and associates of the LNFM Cartel used to further its goals and achieve its purposes included, but was not limited to the following:

a. Members and associates of the LNFM Cartel coordinated with drug couriers in Mexico and the United States to illegally import large quantities of cocaine, methamphetamine,

and heroin into the United States through various drug trafficking routes, including the international bridges between Piedras Negras, Coahuila, Mexico and Eagle Pass, Texas, and miles of open desert stretching out into the Rio Grande Valley, and oversaw the distribution of, and distributed, cocaine, methamphetamine, and heroin in Texas and elsewhere in the United States;

b. The LNFM Cartel coordinated with its members and associates in Mexico and the United States to smuggle illegal aliens across the United States-Mexico border, in exchange for substantial profits, and then further transported illegal aliens to their final destinations throughout the United States;

c. Members and associates of the LNFM Cartel trafficked firearms into Mexico as tools necessary to maintain control over fertile territory, advance their standing amongst other transnational criminal organizations, and commit acts of violence to achieve its purposes;

d. Members and associates of the LNFM Cartel smuggled the proceeds of their illegal activities to Mexico;

e. Members and associates of the LNFM Cartel committed, attempted to commit, and threatened to commit acts of violence, including kidnapping, torture, and murder, to maintain the hierarchical structure necessary to conduct and expand the LNFM Cartel's criminal operations in the United States;

f. Members and associates of the LNFM Cartel organized, used, and threatened to use physical violence against various individuals to support its criminal objectives.

**Roles of the Defendants**

41. Defendants participated in the operation and management of the LNFM Cartel. To that end:

1. **JOHNNY HURTADO OLASCOAGA** (**"PEZ"**) is the leader of the LNFM

Cartel. **PEZ** is responsible for overseeing the LNFM Cartel's operations, which include the importation and distribution of thousands of kilograms of cocaine, heroin, and methamphetamine into the United States. In addition, **PEZ** oversees the LNFM Cartel's alien smuggling and gun trafficking operations. The vast majority of proceeds from the illicit organizational activity are ultimately returned to **PEZ** and **FRESA** in Mexico.

2. **JOSE ALFREDO HURTADO OLASCOAGA** ("**FRESA**") is the second in command of the LNFM Cartel. Under the directives of his brother, **PEZ, FRESA** is responsible for overseeing the LNFM Cartel's operations, which include the importation and distribution of thousands of kilograms of cocaine, heroin, and methamphetamine into the United States. In addition, **FRESA**, under **PEZ**, oversees the LNFM Cartel's alien smuggling and gun trafficking operations. **FRESA** relays orders and instructions to members of the LNFM Cartel after conferring with **PEZ**.

3. **JOSUE LOPEZ HERNANDEZ** is the third in command of the LNFM Cartel. **LOPEZ HERNANDEZ** oversees the LNFM Cartel's firearms trafficking and security operations.

4. **JOHNNY HURTADO HERNANDEZ** is the fourth in command of the LNFM Cartel and **PEZ**'s son. **HURTADO HERNANDEZ** is responsible for extortion fees in a number of areas under the LNFM Cartel's control and employs sicarios who report directly to him. **HURTADO HERNANDEZ** has a growing role in the LNFM Cartel and is seen as a potential successor to his father and uncle.

5. **EDGAR AGUILAR CRUZ** is a high-ranking member in the LNFM Cartel.

**AGUILAR CRUZ** reports directly to **FRESA**. **AGUILAR CRUZ** runs the LNFM Cartel's firearms trafficking under **LOPEZ HERNANDEZ** and directs the organization's alien smuggling operations.

6. **ROGELIO ESTRADA JARAMILLO** is a mid-level alien smuggler who works under **AGUILAR CRUZ. ESTRADA JARAMILLO** was an active member of the LNFM Cartel's illegal alien smuggling wing when a smuggling event resulted in the deaths of eight illegal aliens in March 2021. **ESTRADA JARAMILLO** also exported firearms and facilitated firearms trafficking for the LNFM Cartel.

7. **FLORENCIO AGUILAR LORENZO** is a mid-level alien smuggler who works under **AGUILAR CRUZ. AGUILAR LORENZO** is **AGUILAR CRUZ**'s brother. **AGUILAR LORENZO** was an active member of the LNFM Cartel's alien smuggling wing when a smuggling event resulted in the deaths of eight illegal aliens in March 2021.

8. **LAURENCIO REYES AMBRIZ** is a mid-level alien smuggler who works under **AGUILAR CRUZ. REYES AMBRIZ** facilitates the smuggling of illegal aliens from Mexico on behalf of the LNFM Cartel. **REYES AMBRIZ** was an active member of the LNFM Cartel's illegal alien smuggling wing when a smuggling event resulted in the deaths of eight illegal aliens in March 2021.

9. **ANASTACIO REYES FLORES** is a mid-level alien smuggler who works under **AGUILAR CRUZ. REYES FLORES** facilitates the smuggling of illegal aliens from Mexico on behalf of the LNFM Cartel. **REYES FLORES** was an active member of the LNFM Cartel's illegal alien smuggling wing when a smuggling event resulted in the deaths of eight illegal aliens in March 2021.

10. **JOSE ANDRES VELA CERVANTES** is a mid-level alien smuggler who works under **AGUILAR CRUZ. VELA CERVANTES** was an active member of the LNFM Cartel's illegal alien smuggling wing when a smuggling event resulted in the deaths of eight illegal aliens in March 2021.

11. **ALFREDO JAIMES JAIMES** is a notable gun trafficker for the LNFM Cartel. **JAIMES JAIMES**, along with other members and associates of the LNFM Cartel, recruited straw purchasers of firearms and supervised gun trafficking efforts in the United States. **JAIMES JAIMES** has also handled the gold plating of firearms for the LNFM Cartel's leadership.

12. **JESUS DANIEL ALVAREZ** is a courier for the LNFM Cartel. **ALVAREZ** has trafficked drugs and firearms for a number of mid-level facilitators in the LNFM Cartel.

13. **CESAR ESPINOSA REYES** is a mid-level drug and firearm trafficker for the LNFM Cartel. **ESPINOSA REYES** coordinates the movement of drugs on behalf of the LNFM Cartel from Mexico and supervises couriers. **ESPINOSA REYES** is also a former sicario and former alien smuggler for the LNFM Cartel.

14. **ABRAN ESPINOSA MONDRAGON** is a major source of supply of cocaine and methamphetamine for the LNFM Cartel. **ESPINOSA MONDRAGON** has supplied numerous methamphetamine and cocaine distributors associated with the LNFM Cartel in the Austin, Texas area.

15. **ANTONIO LANDEROS OJO DE AGUA** is a source of supply of cocaine and methamphetamine for the LNFM Cartel. **OJO DE AGUA** is believed to be in Mexico and supplies methamphetamine and cocaine distributors associated with

the LNFM Cartel in the Austin, Texas area.

16. **ALEJANDRO DIAZ GARCIA** is a facilitator who supervises firearm trafficking for the LNFM Cartel. **DIAZ GARCIA** has recruited straw purchasers of firearms and supervised firearm trafficking efforts with other members and associates of the LNFM Cartel.

17. **ROGELIO PONCE ESQUIVEL** is a middleman between the LNFM Cartel's drug couriers and sources of supply. Additionally, **PONCE ESQUIVEL** is a mechanic who builds aftermarket vehicle compartments used to traffic drugs for the LNFM Cartel.

18. **APOLONIO BENITEZ** is a mid-level drug trafficker who coordinates drug trafficking logistics for the LNFM Cartel, chiefly in Texas and North Carolina

19. **JOHNNY WARNCE MILTON** is a drug trafficking associate of the LNFM Cartel. From his residence, **MILTON** has sent money to couriers working on behalf of the LNFM Cartel and handled narcotics tied to the LNFM Cartel.

20. **HUMBERTO GONZALEZ ARCE** is a source of supply and drug trafficker for the LNFM Cartel. **GONZALEZ ARCE** stores kilograms of heroin and cocaine in batteries which are transported in vans.

21. **OMAR SIXTO BENITEZ** is a drug trafficking associate of the LNFM Cartel. **SIXTO BENITEZ** installs traps on vehicles to transport drugs for the LNFM Cartel in Texas and has also coordinated money transfers.

**<u>The Racketeering Conspiracy</u>**

42. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, both dates being approximate and inclusive, within the Western District

of Texas, the United Mexican States and elsewhere, the Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ-AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"

**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

and others known and unknown, being persons employed by and associated with the LNFM Cartel, an enterprise described in paragraphs 1 through 41 of this Indictment, engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and intentionally conspired, combined, confederated, and agreed together, and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), namely:

a. multiple acts indictable under:

i. Title 8, United States Code, Section 1324 (relating to bringing in and harboring certain aliens for the purpose of financial gain);

ii. Title 18, United States Code, Section 933 (relating to trafficking in firearms); and

iii. Title 18, United States Code, Section 1956 (relating to the

laundering of monetary instruments);

b. multiple offenses involving drug trafficking, in violation of Title 21, United States Code, 841(a)(1), 846, 952(a), 960(a), and 963.

43. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Notice of Special Sentencing Factors**

44. Beginning on or about January 1, 2020, and continuing to and including on or about the date of this Indictment, in the Western District of Texas and elsewhere, as part of their agreement to conduct and participate in the conduct of the affairs of the LNFM Cartel, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"

A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"

knowing and in reckless disregard of the fact said aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally, conspire, combine, confederate, and agree with each other and others known and unknown, to transport and move, and attempt to transport and move, said aliens by means of transportation and otherwise, in furtherance of such violation of law, and said offense resulted in the death of one or more persons, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (a)(1)(B)(iv).

45. On or about March 15, 2021, in the Western District of Texas and elsewhere, as part of their agreement to conduct and participate in the conduct of the affairs of the LNFM Cartel, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ-AGUILAR,"

A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"

knowing and in reckless disregard of the fact that a certain alien, namely Minor Victim, had come to, entered and remained in the United States in violation of law, did knowingly and unlawfully transport and move, and attempt to transport and move, said alien within the United States by means of transportation and otherwise, in furtherance of such violation of law, resulting in the death of one and more persons, to wit, Victims 1-8, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(iv).

46. On or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas and elsewhere, as part of their agreement to conduct and participate in the conduct of the affairs of the LNFM Cartel, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"

**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally conspire and agree to distribute and to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of Cocaine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of Heroin, a Schedule I Controlled Substance, and/or 500 grams or more of a mixture and substance containing a detectable amount of Methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II

Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(i), (ii)(II), (viii), and 846.

47. On or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas and elsewhere, as part of their agreement to conduct and participate in the conduct of the affairs of the LNFM Cartel, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"

A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally combine, conspire, confederate, and agree with others, to import and cause to be imported into the United States 5 kilograms or more of a mixture and substance containing a detectable amount of Cocaine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of Heroin, a Schedule I Controlled Substance, and/or 500 grams or more of a mixture and substance containing a detectable amount of Methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(1), and 963.

**COUNT TWO**
CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE
[21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846]

48. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

49. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"

**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally combine, conspire, confederate, and agree with others, to possess with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of Cocaine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A) and 846.

## COUNT THREE

CONSPIRACY TO IMPORT COCAINE
[21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963]

50. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

51. Beginning on or about January 1, 2006, and continuing to and including on or about

the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally combine, conspire, confederate, and agree with others, to import and cause to be imported into the United States 5 kilograms or more of a mixture or substance containing a detectable amount of Cocaine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(1), and 963.

**COUNT FOUR**

CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE HEROIN
[21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846]

52. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

53. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"

A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally combine, conspire, confederate and agree with others, to possess with the intent to distribute 1 kilogram or more of a mixture and substance containing a detectable amount of Heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A) and 846.

**<u>COUNT FIVE</u>**
CONSPIRACY TO IMPORT HEROIN
[21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963]

54. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

55. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"

**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ROGELIO PONCE ESQUIVEL, (17)**
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**
A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did knowingly and intentionally combine, conspire, confederate, and agree with others, to import and cause to be imported into the United States 1 kilogram or more of a mixture or substance containing a detectable amount of Heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(1), and 963.

**COUNT SIX**

CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE
[21 U.S.C. § 841(a)(1) & (b)(1)(A) and 846]

56. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

57. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and

elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"

did knowingly and intentionally combine, conspire, confederate and agree together and with others, to possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of Methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A) and 846.

**COUNT SEVEN**
CONSPIRACY TO IMPORT METHAMPHETAMINE
[21 U.S.C. §§ 952(a) and 960(a)(1) & (b)(1), and 963]

58. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by

reference as though fully set forth herein.

59. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"

did knowingly and intentionally combine, conspire, confederate, and agree together and with others, to import and cause to be imported into the United States 500 grams or more of a mixture or substance containing a detectable amount of Methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1) & (b)(1), and 963.

**COUNT EIGHT**

CONSPIRACY TO TRANSPORT ILLEGAL ALIENS RESULTING IN DEATH
[8 U.S.C. § 1324(a)(1)(A)(v)(I) & (B)(iv)]

60. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

61. Beginning on or about January 1, 2020, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"

**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"

knowing and in reckless disregard of the fact said aliens came to, entered, and remained in the United States in violation of law, did knowingly and intentionally, conspire, combine, confederate, and agree with each other and others known and unknown to the Grand Jury, to transport and move, and attempt to transport and move, said aliens by means of transportation and otherwise, in furtherance of such violation of law, and said offense resulted in the death of one or more persons, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(iv).

**COUNT NINE**
ILLEGAL ALIEN TRANSPORTATION RESULTING IN DEATH
[8 U.S.C. § 1324(a)(1)(A)(ii) & (B)(iv)]

62. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

63. On or about March 15, 2021, in the Western District of Texas, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"

A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"

knowing and in reckless disregard of the fact that a certain alien, namely Minor Victim, had come to, entered and remained in the United States in violation of law, did knowingly and unlawfully transport and move, and attempt to transport and move, said alien within the United States by means of transportation and otherwise, in furtherance of such violation of law, and said offense resulted in the death of one and more persons, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) & (B)(iv).

**COUNT TEN**
CONSPIRACY TO SMUGGLE GOODS FROM THE UNITED STATES
[18 U.S.C. §§ 371 & 554]

64. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

65. Beginning on or about June 1, 2020, and continuing until on or about June 24, 2022, in the Western District of Texas, and elsewhere, Defendants,

**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"

A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"

knowingly and willfully did combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit the following offenses against the United States, that is, knowingly and unlawfully receiving, concealing, and facilitating the transportation and concealment of any merchandise, article, and object, prior to exportation and attempted exportation, to-wit:

1-Barrett M82A1, .50 Caliber Rifle [S/N AA013751]
5- Polish RPD Drum with 100-Round Belt Magazines
1-Palmetto State Armory AK-D, 7.62 caliber, rifle [S/N: AKD000615]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD043312]
1-Palmetto State Armory AK-D, 7.62 caliber, rifle [S/N: AKD000827]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD042636]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD043006]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD042957]
1-Palmetto State Armory PSAK-S, 7.62 caliber, rifle [S/N: AKD003145]
1-Anderson, AR-15 Rifle [S/N: None, Obliterated]
1-Francolin Intl. Arms Co., Citadel 12 Gauge Shotgun [S/N: 21PTN2309]
1-Glock, 26 (Gen 5), 9mm Pistol [S/N: AGDG828, Obliterated]
1-Girsan, MC1911 S, .45 Caliber Pistol [S/N: T636822A81472]
1-Taurus, G2C, 9mm Pistol [S/N: 1C042472]
1-Taurus, G3, 9mm Pistol [S/N: ADH586745]
1-Glock, 43X, 9mm Pistol [S/N: BSSE426]
1-Taurus, G3, 9mm Pistol [S/N: ADH593934]
1-Pistol, Unknown Manufacturer, Model, Caliber, and [S/N, Obliterated]
700 Rounds - 5.56 Ammunition

320 Rounds - 300 Blackout Ammunition
200 Rounds - .22 Caliber Ammunition
100 Rounds - 9mm ammunition
60 Rounds - 300 Blackout Ammunition
37 Rounds - .380 Ammunition
23 Rounds - 9mm Ammunition
19 Rounds - 9mm Ammunition
15 Rounds - 12 Gauge Shotgun Ammunition
7 Rounds - 9mm Ammunition
1 PMAG D-60 Magazine
1 - AK-47 Magazine
5 - AR Rifle Magazines
1- Unspecified, .45 ACP Magazine
2 - Unspecified, Glock Magazines
3 - Unspecified, 9mm Magazine

knowing the same to be intended for exportation from the United States, contrary to any law or regulation of the United States, in violation of Title 18, United States Code, Sections 371 and 554.

**Overt Acts**

66. One or more of the Defendants committed at least one of the following overt acts in furtherance of the conspiracy charged in Count Ten:

a. Beginning on or about June 1, 2020, through June 24, 2022, on different occasions, **EDGAR AGUILAR-CRUZ (5)** arranged for the purchase, storage and shipment of said CCL items to be shipped from the United States to Mexico.

b. On or about February 8, 2022, **EDGAR AGUILAR-CRUZ (5)** directed the purchase of five (5) drum magazines and their subsequent storage at a residence in Buda, Texas.

c. Beginning on or about June 1, 2020, through June 24, 2022, on different occasions, **EDGAR AGUILAR-CRUZ (5)** transferred and received United States currency directly related said purchased CCL items to be shipped from the United States to Mexico.

d. On or about September 30, 2021, **ROGELIO ESTRADA-JARAMILLO (6)** attempted to export CCL items, specifically firearms, to Mexico, through the Laredo, Texas Port of Entry.

e. Beginning or about May 1, 2022, through June 24, 2022, **EDGAR AGUILAR-CRUZ (5)** and **ROGELIO ESTRADA-JARAMILLO (6)** directed, acquired, concealed, and stored said CCL items at a residence in Bastrop, Texas, with an understanding that they were to be shipped from the United States to Mexico.

**COUNT ELEVEN**
SMUGGLING GOODS FROM THE UNITED STATES
[18 U.S.C. § 554]

**Introduction**

67. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

68. At all times relevant to this Indictment:

a. The Commerce Control List ("CCL"), located at Title 15, Code of Federal Regulations, Section 774, details commodities, software, and technology subject to control by the United States Department of Commerce, Bureau of Industry and Security pursuant to the Export Control Reform Act, Title 50, United States Code, Chapter 58.

b. The CCL is part of the Export Administration Regulations ("EAR"), located at Title 15, Code of Federal Regulations, Section 730 *et seq*.

c. Firearms are designated as controlled items in Section 774, Appendix Supplement Number 1 of the CCL.

d. Ammunition is designated as controlled item in Section 774, Appendix Supplement Number 1 of the CCL.

e. According to Title 15, Code of Federal Regulations, Section 736.2, a person may not export an item subject to the EAR to another country if exporting that item to that country requires a license.

f. Exportation of firearms and ammunition to Mexico requires a license.

g. Defendants **EDGAR AGUILAR CRUZ (5)** and **ROGELIO ESTRADA JARAMILLO (6)** did not have a license or any authority to export firearms or ammunition out of the United States to Mexico.

69. On or about February 14, 2022, in the Western District of Texas, and elsewhere,

Defendants,

**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"

did knowingly and unlawfully aid and abet the exportation and attempted exportation of merchandise from the United States, to wit: multiple firearms, ammunition and accessories, including one and more of the following:

**EDGAR AGUILAR-CRUZ (5)**
1-Barrett M82A1, .50 Caliber Rifle [S/N AA013751]

**EDGAR AGUILAR-CRUZ (5)**
1-Palmetto State Armory AK-D, 7.62 caliber, rifle [S/N: AKD000615]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD043312]
1-Palmetto State Armory AK-D, 7.62 caliber, rifle [S/N: AKD000827]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD042636]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD043006]
1-Palmetto State Armory PSAK47, 7.62 caliber, rifle [S/N: AKD042957]
1-Palmetto State Armory PSAK-S, 7.62 caliber, rifle [S/N: AKD003145]

**EDGAR AGUILAR-CRUZ (5)**
**ROGELIO ESTRADA-JARAMILLO (6)**
1-Anderson, AR-15 Rifle [S/N: None, Obliterated]
1-Francolin Intl. Arms Co., Citadel 12 Gauge Shotgun [S/N: 21PTN2309]
1-Glock, 26 (Gen 5), 9mm Pistol [S/N: AGDG828, Obliterated]
1-Girsan, MC1911 S, .45 Caliber Pistol [S/N: T636822A81472]
1-Taurus, G2C, 9mm Pistol [S/N: 1C042472]

1-Taurus, G3, 9mm Pistol [S/N: ADH586745]
1-Glock, 43X, 9mm Pistol [S/N: BSSE426]
1-Taurus, G3, 9mm Pistol [S/N: ADH593934]
1-Pistol, Unknown Manufacturer, Model, Caliber, and [S/N, Obliterated]
700 Rounds - 5.56 Ammunition
320 Rounds – Winchester 300 Blackout Ammunition
200 Rounds - .22 Caliber Ammunition
100 Rounds - 9mm ammunition
60 Rounds - American Eagle 300 Blackout Ammunition
37 Rounds - .380 Ammunition
23 Rounds - of 9mm Ammunition
19 Rounds - 9mm Ammunition
15 Rounds - 12 Gauge Shotgun Ammunition
7 Rounds - 9mm Ammunition
1 PMAG D-60 Magazine
1 - AK-47 Magazine
5 - AR Rifle Magazines
1- Unspecified, .45 ACP Magazine
2 - Unspecified, Glock Magazines
3 - Unspecified, 9mm Magazine

contrary to any law and regulation of the United States, and aided and abetted the purchase, transportation, concealment, storage, purchase, and sale of said firearms prior to exportation and attempted exportation knowing that the firearms were intended for export, the exportation and attempted exportation being contrary to any law and regulation of the United States and had not obtained a license and written authorization for such attempted export, in violation of Title 50, United States Code, Section 4819 and Title 15, Code of Federal Regulations, Sections 774 and 736.2(b)(1), all in violation of Title 18, United States Code, Sections 554 & 2.

**COUNT TWELVE**

CONSPIRACY TO TRAFFIC FIREARMS

[18 U.S.C. § 933(a)(1), (a)(3), and (b)]

70. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

71. Beginning on or about June 25, 2022, and continuing to and including on or about the date of this Indictment in the Western District of Texas, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"
**JESUS DANIEL ALVAREZ, (12)**
**CESAR ESPINOSA REYES, (13)**
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"

did knowingly conspire and agree together and with others known and unknown, to ship, transport, transfer, cause to be transported, and otherwise dispose of one and more firearms, including but not limited to:

1-Smith & Wesson model 380 Shield EZ, .380 caliber handgun (S/N: RES7736)
1- FNH model SCAR 17S, 7.62mm rifle (S/N: H1C23707)
1- FNH model SCAR 16S, 5.56mm rifle (S/N: obliterated)
1- Romarm/Cugir model WASR-10UF, 7.62mm rifle (S/N: 22UF-6571)
1- Israel Weapon Industries (IWI) model Galil Ace SAR, 5.56 mm handgun (S/N: obliterated)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 7.62mm rifle (S/N: D133864)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 5.56mm rifle (S/N: E088647)
1- CZ (Ceska Zbrojovka) model 805 Bren S1, 5.56mm rifle (S/N: obliterated)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 5.56mm rifle (S/N: E372421)
1- Sig Sauer model 716, 7.62mm rifle (S/N: obliterated)
1- Crusader Arms (CruArms) model Temp556, 5.56mm rifle (S/N: 2023TEM0052)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 5.56mm handgun (S/N: obliterated)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 5.56mm rifle (S/N: obliterated)
1- Israel Weapon Industries (IWI) model Galil Ace SAR, 7.62mm rifle (S/N: G20322**)
1- FNH model SCAR 16S, 5.56mm rifle (S/N: obliterated and unable to restore)
1- Israel Weapon Industries (IWI) model Galil Ace SAR, 5.56 mm rifle (S/N: G2029*85)
1- Israel Weapon Industries (IWI) model Galil Ace SAR, 7.62mm rifle (S/N: G2*****)
1- CZ (Ceska Zbrojovka) model Bren 2MS, 7.62mm handgun (S/N: H311937)
1- Israel Weapon Industries (IWI) model Tavor X95, 5.56mm rifle (S/N: ****52)
1- Israel Weapon Industries (IWI) model Tavor SAR, .223 caliber rifle (S/N: obliterated)
1- Israel Weapon Industries (IWI) model Galil Ace SAR, 7.62mm rifle (S/N: G0007***)
1- Israel Weapon Industries (IWI) model Tavor SAR, 5.56mm rifle (S/N: T***25)
1- Israel Weapon Industries (IWI) model Tavor SAR, 5.56mm rifle (S/N: obliterated)
1- Romarm/Cugir model WASR-10UF, 7.62mm rifle (S/N: 23UF-91)
1- Romarm/Cugir model WASR-10UF, 7.62mm rifle (S/N: 23UF-7850)
1- Romarm/Cugir model WASR-10UF, 7.62mm rifle (S/N: 23UF-7857)
1- Romarm/Cugir model WASR-10UF, 7.62mm rifle (S/N: 23UF-9340)
1- Palmetto State Armory (PSA) PSAK47, 7.62mm rifle (S/N: G*3-4*42)
1- Palmetto State Armory (PSA) PSAK47, 7.62mm rifle (S/N: obliterated)
1- Pioneer Arms Corporation (Radom) model Sporter, 7.62mm rifle (S/N: PAC23PL15561)
1- Glock model 19 Gen.4 9mm handgun rifle (S/N: RTF795)
1- Sig Sauer model Spartan II, .380 caliber handgun (S/N: 27C060935)
1- Israel Weapon Industries (IWI) model Galil Ace SAR 5.56mm rifle (S/N: obliterated)
1- Palmetto State Armory, Model: PSK-U, 7.62m rifle bearing serial number AKU004784
1- Palmetto State Armory, Model: PSK-U, 7.62mm rifle bearing serial number AKU004782.
1- Pioneer Arms Corp, Model: Sporter, 7.62 mm rifle bearing serial number PAC23PL16516F
1- Pioneer Arms Corp, Model: Sporter, 7.62-mm rifle bearing serial number PAC23PL16514F
1- M249S, 5.56x45 mm caliber rifle (S/N: M249SA11466)
1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019409)
1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019407)

1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019415)
1- Barrett, model: 82A1, 50 caliber rifle (S/N: AA019398)
1- Ohio Ordnance Works, model: M2-SLR, .50 caliber rifle (S/N: 850775)
1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019411)
1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019410)
1- Barrett, model: 82A1, .50 caliber rifle (S/N: AA019395)
1- Ohio Ordnance Works, model: M2-SLR, .50 caliber rifle (S/N: 850778)
1- Barrett, model: 82A1CQ, .50 caliber rifle (S/N: AA019499)
1- Barrett, model: 82A1CQ, .50 caliber rifle (S/N: AA019399)
1- Barrett, model: 82A1CQ, .50 caliber rifle (S/N: AA019401)
1- Barrett, model: 82A1CQ, .50 caliber rifle (S/N: AA019396)

to another person, in and affecting interstate and foreign commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of a firearm by the recipient would constitute a felony, in violation of Title 18, United States Code, Sections 933(a)(1), (a)(3), and (b).

**COUNT THIRTEEN**
CONSPIRACY TO LAUNDER MONEY INTERNATIONALLY
[18 U.S.C. § 1956(h)]

72. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

73. Beginning on or about January 1, 2006, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA, (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"

**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ROGELIO ESTRADA JARAMILLO, (6)**
A/K/A "ROYER JARAMILLO,"
A/K/A "ROYER JARA,"
A/K/A "CHINO,"
**FLORENCIO AGUILAR LORENZO, (7)**
A/K/A "LENCHO,"
**LAURENCIO REYES AMBRIZ, (8)**
A/K/A "WENCHO,"
**ANASTACIO REYES FLORES, (9)**
A/K/A "TACHO,"
**JOSE ANDRES VELA CERVANTES, (10)**
A/K/A "BARBAS,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"
**CESAR ESPINOSA REYES, (13)**
**ABRAN ESPINOSA MONDRAGON, (14)**
A/K/A "CHAPARRO,"
**ANTONIO LANDEROS OJO DE AGUA, (15)**
A/K/A "TONE,"
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"
**APOLONIO BENITEZ, (18)**
**JOHNNY WARNCE MILTON, (19)**

A/K/A "MILKMAN,"
**HUMBERTO GONZALEZ ARCE, (20)**
A/K/A "MIJA,"
A/K/A "BETO,"
**OMAR SIXTO BENITEZ, (21)**

did unlawfully, knowingly and intentionally combine, conspire, confederate and agree together, and with others known and unknown to the Grand Jury, to commit certain offenses under 18 U.S.C. § 1956, as follows:

(a) to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce that involved property which was the proceeds of a specified unlawful activity, to wit, 8 U.S.C. §1324(a)(1)(A)(v)(I) & (B)(iv) - Conspiracy to Transport Illegal Aliens Resulting in Death, with the intent to promote the carrying on of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

(b) to transport, transmit, and transfer and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, to wit, the United Mexican States, with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of, and to avoid a transaction reporting requirement under State and Federal law, the specified unlawful activity, to wit, 8 U.S.C. §1324(a)(1)(A)(v)(I) & (B)(iv) - Conspiracy to Transport Illegal Aliens resulting in Death, in violation of Title 18, United States Code, Section 1956(a)(2)(B) and (a)(2)(B)(ii).

All in violation of 18 U.S.C. § 1956(h).

**COUNT FOURTEEN**

CONSPIRACY TO PROVIDE AND ATTEMPT TO PROVIDE MATERIAL SUPPORT TO DESIGNATED FOREIGN TERRORIST ORGANIZATION
[18 U.S.C. § 2339B]

74. Paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

75. Beginning on or about February 20, 2025, and continuing to and including on or about the date of this Indictment, in the Western District of Texas, the United Mexican States, and elsewhere, Defendants,

**JOHNNY HURTADO OLASCOAGA (1)**
A/K/A "PEZ,"
A/K/A "DON GABINO,"
**JOSE ALFREDO HURTADO OLASCOAGA, (2)**
A/K/A "FRESA,"
A/K/A "CHINO,"
**JOSUE LOPEZ HERNANDEZ, (3)**
A/K/A "COLIMA,"
**JOHNNY HURTADO HERNANDEZ, (4)**
A/K/A "TARZAN,"
**EDGAR AGUILAR CRUZ, (5)**
A/K/A "ALEX,"
A/K/A "ALEX AGUILAR,"
A/K/A "EDWIN CRUZ AGUILAR,"
A/K/A "GALLITO,"
A/K/A "GALLO,"
A/K/A "GALLITO DE JUGETES,"
A/K/A "GALLO DE ORO,"
A/K/A "MI AMIGO EL VIEJON,"
A/K/A "GALLITO EL VIEJON,"
**ALFREDO JAIMES JAIMES, (11)**
A/K/A "AJJ,"
A/K/A "ALFREDO832,"
A/K/A "ADA,"
A/K/A "ALFIE,"
A/K/A "JAIMESHTX,"
A/K/A "ALFYHTX832,"
**ALEJANDRO DIAZ GARCIA, (16)**
A/K/A "LUIS,"

did knowingly and willfully combine, conspire, confederate and agree with each other, to provide and attempt to provide material support and resources, as defined in Title 18, United States Code, Section 2339A(b), including: firearms, and currency and monetary instruments (collectively "money") to purchase firearms, knowing and intending that such money and property were to be provided to a foreign terrorist organization, namely, La Nueva Familia Michoacana, which was designated by the United States Secretary of State as a foreign terrorist organization on February 20, 2025, pursuant to Section 219 of the Immigration and Nationality Act, knowing that La Nueva Familia Michoacana was a designated foreign terrorist organization [as defined in Title 18, United States Code, Section 2339B(g)(6)], that La Nueva Familia Michoacana engages in and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act), and that La Nueva Familia Michoacana engages in and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

All in violation of Title 18, United States Code, Section 2339B.

**NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE**
**[*See* Fed. R. Crim. P. 32.2.]**

**I.**
**RICO Conspiracy Violation and Forfeiture Statutes**

**[Title 18 U.S.C. § 1962(d), subject to forfeiture pursuant to Title 18 U.S.C. § 1963(a)(1)-(3) and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461]**

As a result of the criminal violations set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property upon conviction and pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 1963(a)(1)-(3), and Title 18 U.S.C. § 981(a)(l)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461 which state:

**Title 18 U.S.C. § 1963. Criminal Penalties**
**(a)** Whoever violates any provision of section 1962 of this chapter shall…
forfeit to the United States, irrespective of any provision of State law-
**(1)** any interest the person has acquired or maintained in violation of section 1962;
**(2)** any-
**(A)** interest in;
**(B)** security of;
**(C)** claim against; or
**(D)** property or contractual right of any kind affording a source of influence over;
any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
**(3)** any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of section 1962.

**(b)** Property subject to criminal forfeiture under this section includes-
**(1)** real property, including things growing on, affixed to, and found in land; and
**(2)** tangible and intangible personal property, including rights, privileges, interests, claims, and securities.

**II.**
**<u>Immigration Violations and Forfeiture Statute</u>**
**[Title 8 U.S.C. § 1324 (a)(1)(A)(ii), (a)(1)(A)(v)(I) & (B)(iv), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(6)(A)]**

As a result of the criminal violations set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to FED. R. CRIM. P. 32.2 and Title 18 U.S.C. § 982(a)(6)(A) which states the following:

**Title 18 U.S.C. § 982 Criminal forfeiture**
**(a)(6)(A)** The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate, section 274(a) . . . of the Immigration and Nationality Act . . . shall order that the person forfeit to the United States, regardless of any provision of State law—
**(i)** any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted; and
**(ii)** any property real or personal—

> **(I)** that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or
> **(II)** that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

**III.**
**<u>Drug Violations and Forfeiture Statutes</u>**
**[Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846, subject to forfeiture pursuant to Title 21 U.S.C. §§ 853(a)(1) and (2).]**

As a result of the criminal violations set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to Fed. R. Crim. P. 32.2 and Title 21 U.S.C. § 853(a)(1) and (2), which state:

> **Title 21 U.S.C. § 853. Criminal forfeitures**
> **(a) Property subject to criminal forfeiture**
> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—
> **(1)** any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
> **(2)** any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation

**IV.**
**<u>Money Laundering Violation and Forfeiture Statutes</u>**
**[Title 18 U.S.C. § 1956(h), subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]**

As a result of the criminal violation set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or

any property traceable to such property.

**V.**
**Smuggling Violation and Forfeiture Statutes**
**[Title 18 U.S.C. § 554, subject to forfeiture pursuant to Title 19 U.S.C. § 1595a(d), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the criminal violation set forth above, the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to FED. R. CRIM. P. 32.2 and Title 19 U.S.C. § 1595a(d), made applicable to criminal forfeiture pursuant to Title 28 U.S.C. § 2461(c), which states the following:

> **Title 19 U.S.C. § 1595a. Aiding unlawful importation**
> **(d) Merchandise exported contrary to law**
> Merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation shall be seized and forfeited to the United States.

**VI.**
**Firearm Violations and Forfeiture Statutes**
**[Title 18 U.S.C. §§ 933(a)(1), (a)(3) and (b) pursuant to Title 18 U.S.C. §§ 934(a)(1)(A) and (B) made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]**

As a result of the criminal violations set forth above the United States of America gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. §§ 934(a)(1)(A) and (B), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states:

> **(d)(l)** Any firearm or ammunition involved in or used in any knowing violation of subsection . . . (a) . . . of section 933 . . . shall be subject to seizure and forfeiture . . . under the provisions
> of this chapter. . . .

**VII.**
**Terrorism Violation and Forfeiture Statutes**
**[Title 18 U.S.C. § 2339B; subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C) & (G), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461]**

As a result of the criminal violation set forth above, the United States gives notice to the Defendants of its intent to seek the forfeiture of certain property, upon conviction and as a part of sentence pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(G), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461, which states:

> **Title 18 U.S.C. § 981.**
> **(a)(1)** The following property is subject to forfeiture to the United States:
>
> * * *
>
> > **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Terrorism is an offense constituting "specified unlawful activity" as defined in Title 18 U.S.C. § 2339(B).

* * *

> **(G)** All assets, foreign or domestic-
>
> **(i)** of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization;

## VIII.
## Money Judgment

**Money Judgment:** A sum of money equal to the value of the proceeds obtained, directly or indirectly and/or equal to the value of the property used or intended to be used to facilitate the violations described above for which each Defendant is solely liable.

## IX.
## Substitute Property

If any proceeds from the violation, as a result of any act or omission of the Defendants—

**(A)** cannot be located upon the exercise of due diligence;
**(B)** has been transferred or sold to, or deposited with, a third party;
**(C)** has been placed beyond the jurisdiction of the court;
**(D)** has been substantially diminished in value; or
**(E)** has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property of the Defendants, up to the value of each money judgment, as substitute property pursuant to Title 21 U.S.C. § 853(p) and FED. R. CRIM. P. 32.2(e).

A TRUE BILL.

[redacted]

FOREPERSON

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By: ______________________________
WARSAME A.K. GALAYDH
Assistant United States Attorney